UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GLENFORD S. AKEY,

                Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

**REPORT AND
RECOMMENDATION**

08-CV-1084
(NAM/VEB)

## I. INTRODUCTION

In October of 2005, Plaintiff Glenford S. Akey filed an application for Supplemental

Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social

Security Act.  Plaintiff alleges that he has been unable to work since October 15, 2004, due

to anxiety, depression, high blood pressure, a throat condition, abnormal lungs, and other

impairments.  The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through his attorneys, Olinsky & Shurtliff, Jaya A. Shurtliff, Esq. of counsel,

commenced this action on October 10, 2008, by filing a Complaint in the United States

District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial

review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383

(c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for SSI and DIB on October 26, 2005, alleging disability beginning on October 15, 2004. (T at 21, 68-72, 350-53).[1]  Plaintiff's claims were denied initially on February 23, 2006. (T at 21, 35-43).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (T at 21).   A hearing was held in Syracuse, New York on December 13, 2007, before ALJ J. Michael Brounoff.  (T at 21, 365-408).  Plaintiff, represented by counsel, appeared and testified.  (T at 21, 365).  An impartial vocational expert, Victor G. Alberigi, also appeared and testified at the hearing.  (T at 365).  On February 14, 2008,  ALJ Brounoff issued a decision denying the application for benefits.  (T at 21-32).  Plaintiff filed a request for review of that decision.  The ALJ's decision became the Commissioner's final decision on September 4, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 6-8).

Plaintiff, through counsel, timely commenced this action on October 10, 2008. (Docket No. 1).  Plaintiff filed a supporting Brief on March 17, 2009. (Docket No. 10).  The Commissioner filed a Brief in opposition on April 22, 2009. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

motion be granted, Plaintiff's motion be denied, and that this case be dismissed.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

_____

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. (T at 23).  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, October 15, 2004. (T at 23).   The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: chronic obstructive pulmonary disease, anxiety disorder, alcohol dependence, resistant hypertension, degenerative joint disease of both knees and "rule-out" borderline intellectual functioning. (T at 23).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 25).  The ALJ determined that Plaintiff is unable to perform his past relevant work.  (T at 30).

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to lift

5

and carry up to ten (10) pounds occasionally and less than ten (10) pounds frequently, stand for a total of six (6) hours in an eight (8) hour work day, walk for two (2) hours in an eight (8) hour work day, sit for six (6) hours in an eight (8) hour work day, and noted that Plaintiff should avoid respiratory irritants.  (T at 27).  The ALJ found that Plaintiff can perform unskilled and semi-skilled work. (T at 27).  The ALJ also found that given Plaintiff's alcohol dependency, he should avoid environments where alcoholic beverages are normally available such as bars, restaurants, and liquor stores.  (T at 27).

The ALJ noted that Plaintiff, born February 8, 1962, was a "younger individual" as defined in 20 C.F.R. § 404.1563.  (T at 31).   The ALJ found that given Plaintiff's age, education (high school), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 31).  As such, the ALJ found that Plaintiff has not been under a disability, as defined under the Act at any time relevant to the ALJ's decision. (T at 32).  As noted above, the ALJ's decision became the Commissioner's final decision on September 4, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 6-8).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  He offers four (4) main arguments in support of this position.  First, Plaintiff asserts that the ALJ's RFC assessment is not supported by substantial evidence.  Second, he contends that the ALJ's reliance on the vocational expert testimony was misplaced because the vocational expert was presented with flawed hypotheticals.  Third, Plaintiff argues that the ALJ did not apply the correct legal standard to his credibility assessment.   Fourth and finally, Plaintiff asserts that his proper application for benefits should be reopened.  This Court will address

6

each argument in turn.

        **a.**    **RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, Plaintiff challenges two aspects of the ALJ's RFC determination.  First, Plaintiff argues that the ALJ's conclusion that he could stand for up to six (6) hours in an eight (8) hour day was not supported by substantial evidence.  Second, Plaintiff contends that the ALJ's RFC determination is flawed because it does not contain any limitations related to Plaintiff's mental impairments.

### i.       Limitations as to Standing

As to the first point, Plaintiff notes that, while the ALJ found he was capable of standing for six (6) hours in an eight (8) hour work day, no medical source made that specific finding.  Plaintiff also points to the assessment of Dr. Michael Lax, who opined that Plaintiff could stand/walk for less than two (2) hours in an eight (8) hour day. (T at 328). Plaintiff further notes that consultative examiner Dr. Berton Shayevitz found Plaintiff's overall limitations to be "above moderate[ ]." (T at 172).  Plaintiff testified that he could only stand for fifteen (15) minutes before experiencing sharp pain. (T at 388).

This Court finds Plaintiff's argument unavailing.  First, the ALJ's overall assessment is supported even if the Plaintiff is only capable of standing for two (2) hours in an eight (8) hour workday.  The ALJ concluded, based upon the vocational expert's testimony, that Plaintiff could perform three (3) different jobs, all of which were at the sedentary work level. (T at 405-406).  Sedentary work generally requires the ability to stand for two (2) hours in an eight (8) hour work day. SSR 83-10.

Although Dr. Lax opined that Plaintiff could stand less than two (2) hours in an eight (8) hour work day, he only examined Plaintiff once and, thus was not a treating physician. The ALJ was therefore not obliged to give his assessment controlling weight.   Dr. Shayevitz, a consultative examiner, noted that Plaintiff did not require any assistive devices, was able to get on and off the exam table without assistance, and could rise from a chair without difficulty. (T at 170).   Although Dr. Shayevitz found Plaintiff above moderately limited by periods of shakiness, weakness, and shortness of breath with effort, he concluded that the shakiness and weakness were caused by substance abuse. (T at 172).  As to the shortness of breath with effort, the ALJ found that this issue would limit

8

functions such as walking, it would only limit standing "to a lesser extent." (T at 27). This finding is certainly consistent with Dr. Shayevitz's assessment. Further, clinical notes from Plaintiff's treating nurse practioner indicated that Plaintiff denied any shortness of breath, suggesting the problem may not even have been as limiting as Dr. Shayevitz believed. (T at 267). Dr. Shayevitz also opined that Plaintiff was only "minimally limited" by degenerative arthritis in both knees, a limitation more closely linked to the ability to stand. (T at 292). Two (2) State Agency review analysts found that Plaintiff was capable of standing about six (6) hours in an eight (8) hour day. (T at 178, 299). Although the ALJ afforded little weight to these assessments (T at 27-28), they do provide some support for his RFC determination. Laura Jacobson, the treating nurse practitioner, declined to opine as to how long Plaintiff could stand during an eight (8) hour work day. (T at 323).

Plaintiff offered contradictory testimony concerning his limitations. At first he said that he was not restricted as to sitting or standing and had not been told by his doctor to limit his sitting or standing. (T at 388). Plaintiff then claimed that he could only sit for fifteen (15) minutes before experiencing sharp pain. (T at 388). He also performs many household chores consistent with an ability to perform sedentary work, *e.g.* lawn mowing (which Plaintiff testified takes "all day"), laundry, cooking, cleaning, and shopping. (T at 395).

In light of the foregoing, this Court finds that substantial evidence supports the ALJ's assessment that Plaintiff retained the RFC to perform at least the three (3) sedentary jobs identified by the vocational expert.

### ii.    Mental Impairment

Plaintiff also contends that the ALJ erred because he did not incorporate any mental limitations in his RFC assessment. In this regard, Plaintiff notes that the ALJ found that his

9

anxiety disorder was a severe impairment.  (T at 23).  Further, a State Agency review analyst opined that Plaintiff was "moderately limited" with regard to his ability to accept instructions and respond appropriately to criticism from supervisors. (T at 319).  The analyst also found moderate limitations as to social functioning and maintaining concentration, persistence, and pace. (T at 314).  Ms. Jacobson, the treating nurse practitioner, opined that Plaintiff had a "marked limitation" with respect to dealing with work stress. (T at 325).

The ALJ concluded that Plaintiff was intellectually capable of performing unskilled and semi-skilled work, but not skilled work. (T at 30).  He found no evidence to support any other mental functional limitations for work. (T at 30).  This Court finds that the ALJ's assessment in this regard is supported by substantial evidence.

Dr. Jeanne A. Shapiro performed a consultative psychiatric examination and found Plaintiff to be cooperative, with adequate social skills. (T at 286).  Attention, concentration, and memory were noted to be intact. (T at 287). Dr. Shapiro opined that Plaintiff was capable of understanding and following simple instructions and directions.  (T at 288).  He appeared to be capable of performing simple and complex tasks with supervision and independently.  (T at 288).  Although Dr. Shapiro noted that Plaintiff may have some difficulty adequately dealing with stress, he appeared to be capable of maintaining attention and concentration for tasks; regularly attending to a routine and maintaining a schedule; making appropriate decisions; and interacting appropriately with others. (T at 288).

Another consultative examination was performed by Dr. Dennis M. Noia, who also noted that Plaintiff would have difficulties dealing with stress. (T at 176).  However, Dr. Noia's overall assessment of Plaintiff's abilities was consistent with Dr. Shapiro's. (T at 175-

76).  As noted above, Dr. Maya, one of the State Agency review analysts, noted moderate limitations as to social functioning and concentration, persistence, and pace. (T at 319).  However, Dr. Apacible (another State Agency review analyst) found moderate limitation only as to concentration, persistence, and pace and no limitation as to social functioning. (T at 193).  Neither analyst found any marked limitations and their overall assessments are suggestive of, at most, mild limitations.  Even Dr. Maya concluded that Plaintiff was not significantly limited in 16 out of 20 possible categories. (T at 318-19).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants  are supported by the weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

In light of the above, this Court finds no reversible error in the ALJ's assessment of Plaintiff's mental limitations.

      **b.**    **Hypotheticals**

11

Plaintiff contends that the ALJ erred in relying upon the vocational expert's testimony because the expert was presented with flawed hypotheticals. Plaintiff faults the hypotheticals for the same reasons stated above, namely, that they did not incorporate any mental limitations and that they assumed Plaintiff could stand for six (6) hours in an eight (8) hour workday.

Whether a hypothetical given to a vocational is appropriate depends on whether the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

As set forth above, the ALJ's RFC determination was supported by substantial evidence. Thus, his hypothetical, which incorporated facts within the range of proof and incorporated the other factors included within that determination, was proper and the ALJ was entitled to rely on the vocational expert's testimony in support of a finding of no disability.

### c.    Credibility

Plaintiff contends that the ALJ did not properly evaluate the credibility of his testimony regarding disabling pain and limitations.

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See

Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

13

3.      Precipitating and aggravating factors;

4.      The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;

5.      Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;

6.      Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.      Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that he experiences anxiety attacks lasting approximately an hour about three (3) to four (4) times a month. (T at 386).  He stated that any lifting over ten (10) pounds causes him to become short of breath. (T at 387).  Although he initially indicated no limitations with regard to sitting or standing, Plaintiff thereafter stated that he experiences sharp pain after standing for fifteen (15) minutes or sitting for two (2) hours. (T at 388).  Plaintiff testified that he has headaches and blurred visions on a daily basis. (T at 390).

The ALJ cited the applicable legal standard, noted that claimant had a consistent earnings record, and found that his medically determinable impairments could reasonably be expected to produce some of his alleged symptoms. (T at 29-30).  However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (T at 30).  This Court finds that substantial evidence supports the ALJ's assessment.

14

Plaintiff offered varying and wholly inconsistent accounts of his alcohol consumption, telling the ALJ that he consumed ten (10) to twelve (12) beers a day before quitting "cold turkey" (T at 374), after having advised medical providers that he presently drinks six (6) to eight (8) beers a week (T at 170),  two (2) to six (6) beers a week (T at 289), and no alcohol at all. (T at 286).  Plaintiff also told the ALJ that he stopped working in October 2004 (T at 376), although an August 2005 progress note from his treating nurse practitioner indicated that Plaintiff was working as a school bus driver. (T at 264).  Plaintiff's activities of daily living, as described above, were also inconsistent with his testimony concerning disabling pain.

Plaintiff argues that the ALJ ignored his past work history and that his consistent earnings record entitled him to enhanced credibility.  However, the ALJ specifically noted Plaintiff's consistent earnings record (T at 30) and, as to several points, afforded Plaintiff the benefit of the doubt. (T at 26, 30).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel,

15

177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

### d.    Remand

Plaintiff filed an earlier application for benefits on March 3, 2005. (T at 63).  In the event of a remand in this particular case, Plaintiff requests that the earlier application be reopened and that the two applications be consolidated.  Because this Court finds that a remand is not warranted here, this Court need not address Plaintiff's request to reopen the prior case.

### IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because this Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be

DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 15, 2010

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report &
Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy
of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the
Clerk of this Court within ten(10) days after receipt of a copy of this Report &
Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)
of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

17

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**
Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 15,  2010

Victor E. Bianchini
United States Magistrate Judge