**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GLENFORD S. AKEY,**

        **Plaintiff,**

 vs.              5:08-CV-1084
                     (NAM/VEB)
**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

APPEARANCES:         OF COUNSEL:

Olinsky, Shurtliff Law Firm      Jana Shurtliff, Esq.
300 S. State Street
5th Floor
Syracuse, New York 13202
*Attorneys for Plaintiff*

Office of General Counsel       Jennifer S. McMahon, Esq.
Region II
26 Federal Plaza
Room 3904
New York, New York 10278

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

   Plaintiff Glenford S. Akey brings the above-captioned action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the Commissioner of Social Security's decision denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter was referred to United States Magistrate Judge Victor E. Bianchini for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.3(d). Magistrate Judge Bianchini recommended that this Court enter judgment on

the pleadings affirming the Commissioner's decision denying disability and dismissing plaintiff's complaint.  Presently before the Court is plaintiff's objection to the Report and Recommendation.[1]

## II.     BACKGROUND

On October 26, 2005, plaintiff filed an application for SSI and DIB.  (T. 21, 68-72, 350-53)[2].  Plaintiff was 43 years old at the time of his application and alleged an inability to work due to abnormal lungs, high blood pressure, a nervous condition, anxiety and depression. (T. 112). Plaintiff's past employment included work as a bus driver and assembler. (T. 31). On February 23, 2006, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on December 13, 2007.  (T. 35-43; 365-408).  On February 14, 2008, the ALJ issued a decision and found at step one that plaintiff had not engaged in substantial gainful activity since his application for SSI and DIB.  (T. 23).  At step two, the ALJ determined that plaintiff's chronic obstructive pulmonary disease, anxiety disorder, alcohol dependence, resistant hypertension, degenerative joint disease of both knees and diagnosis of "rule out" borderline intellectual functioning constituted severe impairments.  (T. 23).  At step three, the ALJ concluded that plaintiff's impairment neither met nor equaled any impairment listed in Appendix 1 of the Regulations. (T. 25).  The ALJ next found that plaintiff retained the residual functional capacity to lift and carry up to ten pounds occasionally and less than ten pounds frequently, stand for a total of six hours in an eight hour work day, walk for two hours in an eight hour work day, sit for six hours in an eight hour work day, and noted that plaintiff should avoid respiratory irritants.  (T. 27). The ALJ also found that plaintiff could perform unskilled and semi-skilled work and given his

---

[1] Defendant has not submitted a response to Plaintiff's Objections.

[2] "(T. )" refers to pages of the administrative transcript, Dkt. No. 8.

alcohol dependency, he should avoid environments where alcoholic beverages are normally available such as bars, restaurants and liquor stores. (T. 27). At step four, the ALJ concluded that plaintiff did not have the residual functional capacity to perform any of his past relevant work. (T. 31). The ALJ obtained the testimony of a vocational expert to determine whether there were jobs plaintiff could perform. Based upon the vocational expert's testimony, the ALJ concluded at step five, that plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy such as work as a an order clerk, new charge account clerk, and dispatcher of maintenance services. (T. 32). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 32). On September 4, 2008, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 6). This action followed.

In the Report and Recommendation, Magistrate Judge Bianchini found that: (1) the ALJ's RFC assessment is supported by substantial evidence; (2) the hypothetical questions posed to the vocational expert were proper; and (3) the ALJ properly assessed plaintiff's credibility. The Magistrate Judge also concluded that because remand was not warranted, there was no need to address or re-open plaintiff's prior applications for benefits. (Dkt. No. 14).

### III. DISCUSSION

#### A. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether plaintiff is disabled. Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131

3

(2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate's Report and Recommendation to which a party specifically objects.  Failure to object timely to any portion of a Magistrate's Report and Recommendation operates as a waiver of further judicial review of those matters.  *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  To the extent,  that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."  *Watson v. Astrue*, 2010 WL 1645060, at *1 (S.D.N.Y. 2010) (citing, *inter alia, Ortiz v. Barkley*, 558 F.Supp.2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation and internal quotation marks omitted)).

   Plaintiff objects to the Magistrate's Report and Recommendation on the following grounds: (1) the Magistrate Judge erred when he found the ALJ's RFC assessment supported by substantial evidence;  (2) the Magistrate Judge erroneously found that the vocational expert's testimony provided substantial evidence for a denial of benefits; (3) the Magistrate erred when he found that the ALJ's credibility assessment complied with the appropriate legal standards; and (4) on remand, plaintiff's prior application should be reopened and the matters should be consolidated. (Dkt. No. 15).   Here, the Court has reviewed plaintiff's objections and compared the arguments made to the

4

arguments presented before Magistrate Judge Bianchini in support of his motion. Plaintiff's arguments are identical. Accordingly, the Report and Recommendation will be reviewed for clear error. *See Barney v. Consol. Edison Co. of New York*, 2007 WL 952035, at *2 (E.D.N.Y. 2007).

## III.     DISCUSSION

### A.     Mental Impairments in RFC Assessment

Plaintiff argues that the ALJ's RFC assessment should have included plaintiff's mental limitations. (Dkt. No. 15, p. 2-5). Specifically, plaintiff claims that because the ALJ found plaintiff's anxiety disorder to be a severe impairment, it should have been included in the RFC assessment.[3]

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

With respect to a mental impairment, "[i]n the event the impairment is deemed severe, but

---

[3] In support, plaintiff cites to 20 C.F.R. § 416.924. Reliance upon that section is misplaced as that Regulation discusses the evaluation of disability for children.

5

does not meet or equal a listed mental disorder, the Commissioner next analyzes the claimant's RFC". *White v. Comm'r of Soc. Sec.,* 2008 WL 820177, at *8 (N.D.N.Y. 2008) (citing 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c)). "Use of the four broad functional categories outlined in § 416.920a to determine whether a claimant's impairments are 'severe' is not equivalent to a mental RFC assessment." *Rosado v. Barnhart*, 290 F.Supp.2d 431, 441 (S.D.N.Y. 2003) (holding that the use of the "B" criteria to determine whether the plaintiff's impairments are "severe" is a separate and distinct step from assessing her mental RFC, which is expressed as work-related functions). SSR 96-8p requires a more detailed assessment than the criteria used to rate the severity of mental impairments. *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00(A) (finding that the RFC assessment "complements" the "B" criteria by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders)). If an ALJ finds that the claimant suffered from any mental impairment, "no matter how unsevere", he has the duty to take that into account when determining plaintiff's capabilities. *Gray v. Astrue*, 2007 WL 2874049, at *7 (S.D.N.Y. 2007).

When determining mental RFC, the ALJ is required to itemize various functions contained in the broad categories outlined in § 416.920a. *See* SSR 96-8p, 1996 WL 374184, at *4. The particular functions that must be assessed are the basic work-related mental activities specified by the regulations - such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting-to such a degree as to reduce his or her ability to do past relevant work and other work. *See* 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c); *see also White*, 2008 WL 820177, at *8; *see also Pabon v. Barnhart*, 273 F.Supp.2d 506, 516 (S.D.N.Y. 2003).

6

SSR 85-16 sets forth what evidence the Commissioner should consider when assessing a claimant's mental residual functional capacity, and provides:

> The determination of mental RFC involves the consideration of evidence, such as:
>
> History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension.
>
> When a case involves an individual . . . who has a severe impairment(s), which does not meet or equal the criteria in the Listing of Impairments, the individual's RFC must be considered in conjunction with the individual's age, education, and work experience. While some individuals will have a significant restriction of the ability to perform some work-related activities, not all such activities will be precluded by the mental impairment. However, all limits on work-related activities resulting from the mental impairment must be described in the mental RFC assessment.

SSR 85-16, Policy Interpretation Ruling Titles II and XVI: Residual Functional Capacity for Mental Impairments, 1985 WL 56855, *2 (S.S.A. 1985).

Here, at step two of the sequential analysis, the ALJ found that plaintiff suffered from anxiety disorder. Plaintiff received treatment for anxiety from Laura Jacobsen, FNP at Central Square Health Center. (T. 256). From July 2005 through August 2006, NP Jacobsen prescribed plaintiff various medications for anxiety however, NP Jacobsen noted that plaintiff did not take the prescribed medications claiming that they made him nauseous or "did not agree with him". In March 2007, NP Jacobsen completed a Medical Source Statement and opined that plaintiff had a "marked limitation" in the ability to deal with work stress and that he was likely to be absent from work more than four days per month as a result of that impairment. (T. 325).

7

In April 2005, Dennis M. Noia, Ph.D. conducted a psychiatric examination of plaintiff at the request of the agency. Dr. Noia opined that plaintiff was capable of understanding and following simple instructions and directions and performing simple and some complex tasks with supervision and independently. (T. 175). He also concluded that plaintiff was capable of maintaining concentration and attention for tasks and could adhere to a routine schedule and learn new tasks. (T. 175). Dr. Noia opined that while plaintiff could relate well with others, he had difficulty dealing with stress. (T. 176). Dr. Noia diagnosed plaintiff with anxiety disorder. In April 2005, M. Apacible, M.D. prepared a Psychiatric Review Technique and Mental RFC at the request of the agency. (T. 183). Dr. Apacible opined that plaintiff had moderate difficulties with concentration and attention and moderate limitations in his ability to respond to changes in the work setting. (T. 193, 198).

In January 2006, Dr. Jeanne A. Shapiro conducted a psychiatric examination on behalf of the agency. (T. 285). Dr. Shapiro's opinions mirror Dr. Noia's conclusions. (T. 288). In February 2006, Zenaida Mata, M.D. prepared a Psychiatric Review Technique and Mental RFC at the request of the agency. (T. 304). Dr. Mata opined that plaintiff had moderate limitations in social function and maintaining concentration. (T. 314). Dr. Mata also concluded that plaintiff's abilities to understand and carry out detailed instructions and respond appropriately to supervisors was moderately limited. Dr. Mata also noted that plaintiff had no history of psychiatric admissions or outpatient treatment. (T. 319).

Here, the ALJ acknowledged the applicable Regulations and his duty in formulating the RFC stating:

> The limitations identified in the "paragraph B" and "paragraph C" criteria are not a residual functional capacity assessment but are used

8

> to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Accordingly, I have translated the above "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment below. (T. 27).

The ALJ summarized all of the aforementioned medical opinions and specifically afforded little weight to Dr. Mata's opinions and to NP Jacobsen's conclusions. Plaintiff does not contest that determination and based upon the record, the Court finds that the ALJ assigned proper weight to those opinions. In support of his claims that he suffers from disabling mental impairments, plaintiff relies solely upon the medical evidence summarized above and does not cite to any other portion of the record. Indeed, the record does not contain any evidence that plaintiff received any other treatment for anxiety from any medical source other than NP Jacobsen. Moreover, plaintiff has never been under the care of any mental health professional for any mental impairment. The record does not contain any reports or opinions from any acceptable treating source with respect to plaintiff's cognitive abilities. The ALJ discussed plaintiff's treatment history, his age, education and work experience in compliance with SSR 85-16. Plaintiff presents nothing more than vague, conclusory objections to the ALJ's determination. Given the lack of treatment for mental impairments, the ALJ's reliance on Dr. Noia's, Dr. Shapiro's and Dr. Apacible's opinions was proper. The doctors conclusions are not contradicted by any evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("In assessing opinions, a written report by a licensed physician who has examined plaintiff may constitute substantial evidence supportive of a finding by the hearing examiner"); *see also Diaz v. Shalala*, 59 F.3d 307, 313, n. 5

9

(2d Cir. 1995) (an ALJ may rely upon the opinions of the state agency consultants when the evidence in the record supports the conclusions).

Consequently, the Court finds that there is substantial evidence in the record to suggest that plaintiff did not have a disabling mental condition. *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). The ALJ properly assessed plaintiff's mental impairments and determined that his anxiety disorder did not limit his ability to perform work-related activities. The ALJ's conclusion that plaintiff was capable of unskilled or semi-skilled work is supported by substantial evidence.

**B.     Vocational Expert's Testimony**

Plaintiff argues that the ALJ presented incomplete hypothetical questions to the vocational expert. Furthermore, plaintiff claims that the vocational expert "expressed doubt" about the validity of his testimony and thus, his testimony cannot support the Commissioner's determination at step 5 of the sequential analysis.

Continuing with the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's residual functional capacity, age, education, and past relevant work. 20 C.F.R. §§ 416.920, 416.960. Ordinarily, the Commissioner meets his burden at this step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). Sole reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's limitations. *Id*. at 606. For example, use of the grids as the exclusive framework for making a disability determination may be precluded where, as here, plaintiff's physical limitations are combined with non-exertional impairments which further limit

10

the range of work he can perform. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603; *see also Melchior v. Apfel*, 15 F. Supp. 2d 215, 58 (N.D.N.Y. 1998) (stating "where nonexertional limitations significantly diminish the ability to perform a full range of work, it is appropriate that the ALJ present testimony from a vocational expert").

The ALJ should elicit testimony from the expert by posing hypothetical questions. If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. 1996). The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater*, 932 F. Supp. 497, 503 (S.D.N.Y. 1996). Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

In this case, the ALJ posed two hypothetical questions to the vocational expert. (T. 404-405). First, the ALJ asked the vocational expert to assume that an individual of plaintiff's age, with a GED diploma and work history who was able to lift and carry 10 pounds occasionally, less than 10 pounds frequently, stand and walk for a total of 2 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, should avoid all exposure to respiratory irritants including extremes of heat and cold, dust, fumes, smoke and strong odors and further assume that the

11

person should avoid settings where alcohol is commonly found. (T. 404). In response, the vocational expert testified that such an individual would be able to do the job of an Order Clerk, New Charge Account Clerk or a Dispatcher of Maintenance Services. (T. 405). The second hypothetical question contained the same limitations however, the ALJ asked the expert to assume the individual had the ability to stand for six hours in an eight hour workday. (T. 405). In response to that hypothetical, the expert testified that all three jobs were still possible. (T. 405).

### 1.     **Incomplete Hypotheticals**

Plaintiff argues that the hypothetical questions posed to the vocational expert did not include all of the plaintiff's impairments and thus, the testimony was fatally deficient. As discussed previously, the ALJ's RFC analysis was supported by substantial evidence. There is no support for plaintiff's contention that he suffered from additional impairments that were improperly omitted from the RFC. Accordingly, this argument lacks merit.

### 2.     **"Reluctant" Testimony**

Plaintiff argues that the expert was reluctant to answer the ALJ's question and therefore, his testimony does not provide substantial evidence for a denial of benefits. Plaintiff does not cite to any caselaw in support of his argument.

The testimony at issue is summarized as follows:

> Q.   All right. Are there any other jobs which exist in significant numbers in the national economy which such a person could perform considering age, education, experience, and residual functional capacity as assumed?
> A.   Now part of what makes that question somewhat challenging is that we know the claimant has a GED . . . but to what extent they actually have reading, spelling, math, and related skills can be somewhat debatable.
> Q.   No, we have to assume what I gave you to assume in the question, which is a GED high school equivalency of diploma.

> A.      Right. That doesn't necessarily tell us - -
> Q.      And whatever levels of reading, math, and language arts are required to successfully pass the tests and get the diploma.
> A.      All right. As I say that is debatable. But I understand that there is work within that hypothetical . . . (T. 404 - 405).

While the ALJ and expert disagreed over issues concerning plaintiff's GED diploma, the expert continued to testify and identified three occupations that plaintiff could perform in significant numbers in the economy. Plaintiff does not cite to any portion of the transcript wherein the expert qualified his responses or otherwise was "reluctant" to answer. "[I]f the expert is unable to testify without qualification about the jobs a claimant can perform, the ALJ may not rely on his opinion." *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475 (6th Cir. 1988); *but cf. Graves v. Sec'y of Health, Educ., & Welfare*, 473 F.2d 807, 809 (6th Cir. 1973) (the Secretary failed to carry his burden when the vocational expert failed to testify without qualification that jobs which the plaintiff could perform actually existed in the economy); *see also Smith v. Shalala*, 1994 WL 774046, at *3 (D. Or. 1994) (the court rejected the plaintiff's argument that the expert's testimony was "tentative and qualified" because he answered questions with "I think"). The Court has reviewed the entire transcript from Administrative Hearing and does not discern any reluctance or hesitation on the expert's part. Furthermore, plaintiff's counsel was given an opportunity to pose his own hypothetical questions to the vocational expert and to cross examine the expert regarding his opinion. Counsel did not address this issue or ask the expert to further clarify any concerns he may have regarding the GED diploma. Accordingly, the Court does not find any clear error in the Magistrate's decision that substantial evidence exists to support the ALJ's conclusions.

**C.      Credibility**

Plaintiff argues that his "consistent earnings record" is evidence of substantial credibility. (Dkt. No. 15, p. 7). Plaintiff also contends that the Magistrate erroneously credited the ALJ's "direct observations" during the hearing and argues that the ALJ's analysis did not comply with the pertinent Regulations.

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]" *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)). If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c) (3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence. *See* Social Security Ruling 96-7p, 1996 WL 374186, at *2; *see also Cloutier*, 70 F.Supp.2d at 278 (holding that although the ALJ's decision contained a discussion of the

14

medical evidence and a summary of the plaintiff's subjective complaints, the decision did not provide a sufficient analysis of the evidence to support the lack of credibility finding).

When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief [.]" *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987). If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984). A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Id*. (quotations and other citations omitted).

While "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work ... [w]ork history [ ] is but one of many factors to be utilized by the ALJ in determining credibility." *Marine v. Barnhart*, 2003 WL 22434094, at *4 (S.D.N.Y. 2003); *see also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998); *Howe-Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007) (holding that although a plaintiff with a long work history is entitled to "substantial credibility", the Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period). "To be sure, 'a good work history may be deemed probative of credibility'". *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010) (quoting *Schaal,* 134 F.3d at 502 (work history, however, is "just one of many factors" appropriately considered in assessing credibility). Moreover, "SSA regulations expressly provide that 'observations by our employees and other persons' will be treated as evidence". Schaal, 134 F.3d at 502 (citing 20

C.F.R. § 416.929(c)(3)).  The Second Circuit has held:

> ALJs are instructed in a Social Security Ruling interpreting 20 C.F.R. § 416.929(c)(3) that "[i]n instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."   Although we have held that an "ALJ's observation that [a claimant] sat through the hearing without apparent pain, being that of a lay person, is entitled to but limited weight," we have not held that it is always error for an ALJ to take account of a claimant's physical demeanor in weighing the credibility of her testimony as to physical disability. Although such observations should be assigned only "limited weight," there is no per se legal error where the ALJ considers physical demeanor as one of several factors in evaluating credibility. We are satisfied that the ALJ here did not afford this observation any improper significance.

*Id*.

In the matter at hand, the ALJ discussed plaintiff's past relevant work experience and noted that plaintiff had a "consistent earnings record".  (T. 30).  The ALJ determined that:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T. 30).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ applied the correct legal standard in assessing plaintiff's credibility.  Nothing in the decision indicates that the ALJ assigned anything more than limited weight to his own observations of plaintiff or that the ALJ relied exclusively upon his observations in assessing plaintiff's credibility. The ALJ discussed plaintiff's daily activities and noted that plaintiff takes care of his yard and lawn.  The ALJ also discussed plaintiff's subjective complaints, including the frequency and intensity of his symptoms, alcohol abuse, medications and side effects. (T. 30). Consequently, the Court finds that the ALJ properly assessed the factors enumerated in 20 C.F.R.

16

§ 404.1529(c)(3)(i)-(vi) and § 416.929(c)(3)(i)-(vi).

In this case, taken as a whole, the record supports the ALJ's determination that plaintiff's claims were not entirely credible. The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of consistent and disabling pain. The ALJ adequately specified the reasons for discrediting plaintiff's statements. Accordingly, plaintiff's objection to Magistrate Bianchini's conclusion regarding credibility is without merit.

**D.     Prior Applications**

On March 3, 2005, plaintiff filed an application for disability benefits.  That application was denied on April 29, 2005.  (T. 35, 63).  Plaintiff argues that the Magistrate erroneously affirmed the Commissioner's decision and thus, did not reach the question of reopening.  Based upon plaintiff's objections discussed above, plaintiff argues that this matter should be remanded and further, that the March 2005 application should be reopened pursuant to 20 C.F.R. §§ 416.1488(a) and 404.988(a) and consolidated with the present application.[4]

The record does not contain any information or evidence with respect to the March 2005 application other than plaintiff's Application for Disability Insurance Benefits and the Notice of Disapproved Claim.  (T. 35, 63).  For the reasons previously stated, remand is not warranted in this matter.  Moreover, while plaintiff seemingly argues that the filing of the second claim, which is the subject of this action, is "an implied request" to reopen the prior application, this argument

---

[4]   20 C.F.R. 404.988(a) and 20 C.F. R. 416.1488(a) provide:

> Conditions for reopening.
> A determination, revised determination, decision, or revised decision may be reopened–
> (a) Within 12 months of the date of the notice of the initial determination, for any reason . . .

17

is unpersuasive. "Under applicable regulations, [the plaintiff] was required to request a reopening of the ALJ's decision directly from the Appeals Council within twelve months of the Council's denial of review of that application". *Brodie v. Comm'r of Soc. Sec*., 267 F. App'x 662, 664 (9th Cir. 2008); (citing See 20 C.F.R. § 404.988(a)). Here, the record contains no evidence that plaintiff made such a request, accordingly, the decision regarding the prior application is final and the district court lacks jurisdiction to review the April 2005 decision. *See id.*; *see also Fonseca v. Chater*, 953 F.Supp. 467, 474 (W.D.N.Y. 1997) ("[w]ere this court to conclude that plaintiff made an implied request to reopen by filing his third disability application, plaintiff would still be required to show good cause"). Plaintiff presents no argument regarding "good cause" nor has plaintiff submitted any new evidence regarding the prior application. Accordingly, plaintiff's request is denied.

## IV.  CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge Victor E. Bianchini is **ADOPTED** in its entirety; and it is further

**ORDERED** that the complaint is dismissed; and it is further

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral to a Magistrate Judge has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit.

**IT IS SO ORDERED.**          Date:   March 31, 2011

Norman A. Mordue
Chief United States District Court Judge